# In the United States Court of Federal Claims

No. 17-528L
(Filed: October 16, 2017)

* * * * * * * * * * * * * * * * * * * *

ERICH BACHMANN and
MONA BACHMANN,

      *Plaintiffs*,

v.

THE UNITED STATES,

      *Defendant*.

Takings Clause; U.S. Const. amend. V.; Inverse Condemnation due to property damage; Police Power Exception; Private Property Damage.

* * * * * * * * * * * * * * * * * * * *

*Sterling Scott Winchell*, Irvine, CA, for plaintiffs.

*Sarah Izfar*, United States Department of Justice, Environment & Natural Resources Division, Natural Resources Section, Washington, DC, for defendant.

## OPINION

BRUGGINK, *Judge*.

Plaintiffs, Erich and Mona Bachmann, own a rental property in Desert Hot Springs, California, that the United States Marshals Service ("USMS") damaged during a criminal investigation on October 5, 2015. Plaintiffs filed their complaint on April 14, 2017. They allege that the USMS effected a Fifth Amendment taking of their real property without just compensation due to the damage caused by USMS's entry onto their property to apprehend a fugitive.

Pending is defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant contends that the USMS damaged the Bachmann property in an exercise of the police power of the United States, and thus that damage could not amount to a compensable Fifth Amendment taking. Defendant also argues that, if plaintiffs claim the law enforcement activity was unlawful, the damage is only actionable in tort rather than pursuant to the Fifth Amendment. The motion is fully briefed, and we held oral argument on October 3, 2017. Because the damage to plaintiffs' property occurred during the exercise of the police power, the Takings Clause is not implicated. We therefore grant defendant's motion to dismiss.

BACKGROUND[1]

Erich and Mona Bachmann own a single family house in Desert Hot Springs, California. The couple rented the house to a tenant while they lived in Long Beach, California. In September 2015, their tenant began an extended absence from the house, leaving it empty. During the tenant's absence, a third party, Jose Castillo, entered the house without plaintiffs' knowledge. At the time, the United States Marshals Service Fugitive Task Force was seeking Mr. Castillo as a suspect.

The USMS became aware that Mr. Castillo was in the Bachmann house. On October 5, 2015, law enforcement officers surrounded the house and surveilled it throughout the day. That evening the USMS, with the assistance of the Riverside County, California, Sheriff's Department, forcefully entered the house and apprehended Mr. Castillo. Plaintiffs allege that the USMS used gunfire, smoke bombs, tear gas, a battering ram, and a robot to gain entry. They further allege that the USMS damaged the surrounding fence, as well as the windows, doors, and interior of the house.

Neither plaintiffs nor their tenant knew of the raid or the damage at the time. Subsequent to the raid, incidents of theft and vandalism further damaged plaintiffs' property. More than a month later, plaintiffs received an electric bill for November 2015 that alerted them that their supposedly-empty rental property had significant electric use for the prior month. Mona Bachmann called the next-door neighbor, Sherry Johnson, who told Mrs. Bachmann about the law enforcement activity the previous month.

---

[1] These facts are drawn from plaintiffs' complaint and assumed to be correct for purposes of ruling on the motion to dismiss.

Plaintiffs filed an administrative tort claim for property damage with the USMS on February 11, 2016.[2] Plaintiffs then filed a complaint in this court, alleging an unconstitutional taking of their property for public use without just compensation in violation of the Fifth Amendment of the United States Constitution.

DISCUSSION

Plaintiffs allege that by damaging their property and leaving it susceptible to further damage, the USMS not only deprived them of value in their property, but also took it for public use, namely, for the purpose of apprehending Mr. Castillo. Defendant responds that plaintiffs cannot state a claim for compensation because, when law enforcement officials damage private property in the process of enforcing criminal law, they are doing so as an exercise of the government's inherent police power and not as an exercise of the right implicit in the takings clause to take private property for public use.[3]

On the facts as alleged, we agree with plaintiffs that they have suffered a serious injury as innocent third parties. We must also agree with

---

[2] The USMS has since denied plaintiffs' claim.

[3] Defendant also contends that, if plaintiffs argue the USMS raid was unlawful, plaintiffs' claim is one for damages from tortious government action over which the Court of Federal Claims does not have jurisdiction. Throughout their complaint, plaintiffs imply that the damage the USMS caused was, at a minimum, unreasonable and potentially unlawful. Compl. ¶¶ 3, 4, 8; Pls.' Resp. to Def.'s Mot. to Dismiss 2-3. This court has jurisdiction to adjudicate claims arising out of the Fifth Amendment Takings Clause. *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987). If plaintiffs claim that they are entitled to compensation due to unlawful police action, however, they are, in effect, asserting tortious conduct. This court does not have jurisdiction over tort claims. Instead, the property owner must pursue the claim administratively first, and then, if necessary in district court. *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001). Because plaintiffs did not directly challenge the lawfulness of the USMS action, however, we resolve the matter on the assumption that they do not dispute the lawfulness of the USMS's action.

defendant, however, that the law does not afford a remedy for this injury through the Takings Clause of the Fifth Amendment.

The parties are unable to cite to the court any controlling precedent directly on point with the facts alleged here: significant, permanent damage to real property held by innocent parties as a consequence of lawful actions by the police. We resort therefore to some basic principles. The Fifth Amendment to the United States Constitution guarantees that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Inverse condemnation is a cause of action used to recover the lost value of property when plaintiffs' property has been taken by the government without any formal use of the eminent domain power. *United States v. Clarke*, 445 U.S. 253, 257 (1980). When alleging any taking theory, the nature of the government's action is critical, because plaintiffs must demonstrate that property was taken for public use by lawful action. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488-89 (1987).

Historically, the Supreme Court of the United States has drawn a distinction on the one hand between the exercise of the police power to enforce the law to remove or restrict nuisances, blights, and other unlawful use of property and, on the other hand the government "taking property for public use." *Mugler v. Kansas*, 123 U.S. 623, 669 (1887); *see also Miller v. Schoene*, 276 U.S. 272, 279-80 (1928) ("[W]here the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property."). This distinction flows from the principle that owners are not entitled to unlimited uses of their property. Unlawful uses or nuisances are not protected. *Pennsylvania Coal Co. v. Mahon*, 290 U.S. 393, 413 (1922); *Mugler*, 123 U.S. at 669. Simultaneously, law enforcement must have the authority to enter onto or seize property, and in some instances damage property, in order carry out their duty to enforce the law. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154-55 (Fed. Cir. 2008). When private property is damaged incident to the exercise of the police power, such damage is not a taking for the public use, because the property has not been altered or turned over for public benefit. Instead, both the owner of the property and the public can be said to be benefited by the enforcement of criminal laws and cessation of the criminal activity. *See Nat'l Bd. of Young Men's Christian Ass'ns v. United States,* 395 U.S. 85, 92-93 (1969).

In the context of personal property, the Federal Circuit has explained that, when law enforcement officials seize and retain property as the suspected instrumentality or evidence of a crime, that property "is not taken for a 'public use' within the context of the Takings Clause." *AmeriSource*, 525 F.3d at 1153. Even when the property subject to seizure or investigation is returned in a damaged condition, the loss of value does not constitute a compensable taking. *Id.* at 1153-54 (holding that when police acted to seize a distributor's pharmaceuticals during a criminal investigation and returned the pharmaceuticals only after the expiration date, a taking did not result, because the limits on police power are "largely imposed by the Due Process Clause"). *AmeriSource* is potentially distinguishable, however, because it dealt with personalty, and that personalty was the object of the police activity. *Seay v. United States*, 61 Fed. Cl. 32 (2004), is to the same effect: when seized, retained personal property was returned to plaintiff damaged due to the government's storage plumbing rupturing, no taking had been effected because the property was seized and retained during a criminal investigation. *Id.* at 35. Here, the real property was incidental to the object of the invasion, namely, apprehending Mr. Castillo. Under the existing law, does that make a difference? We think not.

The USMS temporarily entered and damaged plaintiffs' rental property in order to arrest a suspect hiding out within the house. The operation was limited to putting the house under surveillance in order to capture Mr. Castillo. The only reason USMS and other law enforcement officials were concerned with plaintiffs' property was because a fugitive was using the house as his hideout. The USMS used perhaps the most traditional function of the police power: entering property to effectuate an arrest or a seizure. Despite its owners' lack of knowledge, the house had become instrumental to criminal activity. Plaintiffs acknowledge that the USMS "performed these actions deliberately for the public's safety, to protect the public from a wanted suspect who was perceived by law enforcement to be a danger to the general public." Compl. ¶ 6. Although it would be ideal if such raids were carried out without damage to the private property associated with the investigation, the damage to the house was incident to securing the safety and welfare of both plaintiffs' property and the community at large. Thus, the damage caused in the course of arresting a fugitive on plaintiffs' property was not a taking for public use, but rather it was an exercise of the police power of the United States.

Despite the use of police power at issue in this case, plaintiffs assert that the language and spirit of the Fifth Amendment Takings Clause contemplate payment by the public for damage incidental to the exercise of the police power. Plaintiffs cite a number of cases arising out of state constitutional provisions similar to the federal takings clause, namely Minnesota and Texas constitutional provisions. But both states expressly provide for payment for property damage in their state constitution. *Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 40-42 (Minn. 1991) (holding that the property owner could state a taking claim for property damage pursuant to the Minnesota Constitution when police fired tear gas into the house when apprehending an armed suspect) (quoting Minn. Const. art. I, § 13, "Private property shall not be taken, destroyed or damaged for public use without just compensation, first paid or secured."); *Steele v. Houston*, 603 S.W.2d 786, 790-92 (Tex. 1980) (holding that the property owner could state a taking claim for property damage pursuant to the Texas Constitution when police set fire to the house to capture escaped convicts) (quoting Tex. Const. art. 1, § 17, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ."). California, where plaintiffs live, also expressly includes damage to property in the state constitution takings provision. Cal. Const. art. I, § 19 ("Private property may be taken or damaged for a public use and only when just compensation . . . has first been paid to, or into court for, the owner.").

Federal jurisprudence does not reflect the same broad inclusion of all types of property damage within the scope of the Takings Clause. *E.g.*, *Gibson v. United States*, 166 U.S. 269, 274-75 (1897) (noting the difference between the Pennsylvania constitution's takings provision and the Fifth Amendment Takings Clause); *see also Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1029 (1992); *AmeriSource*, 525 F.3d at 1153-54; *B.F. Trawlers v. United States*, 27 Fed. Cl. 299, 305 (1992). Just as a distinction has been drawn between an exercise of the police power and a taking for public use, "a distinction has been made between damage and taking, and that distinction must be observed in applying the constitutional provision." *Bedford v. United States*, 192 U.S. 217, 224 (1904) (citing *Gibson*, 166 U.S. at 274-75 as "[a]n excellent illustration" in which the Court held building a dyke to improve navigation and thereby preventing access to plaintiff's landing place did not result in a taking).

Requiring money to be spent to repair damage does not rise to the level of a physical or regulatory taking. *See Atlas Corp. v. United States*, 895 F.2d 745, 757-58 (Fed. Cir. 1990) (holding that a statute requiring nuclear power contractors to fund the reclamation and decommissioning of a nuclear power site was not a taking). Particularly where property has been used in a harmful or dangerous manner that is threatening to the lives and property of others, the government may damage the property to rectify the harm, without triggering a Fifth Amendment taking. *Lucas*, 505 U.S. at 1029, n.16; *United States v. Pacific R.R.*, 120 U.S. 227, 239-40 (1887) (military operations); *Bowditch v. Boston*, 101 U.S. 16, 18-19 (1879) (fire); *see also B.F. Trawlers*, 27 Fed. Cl. at 305 (holding that no taking claim resulted when the Coast Guard sank a seized boat which constituted a danger to navigation).

Nor does the innocence of the property owner convert what is otherwise the proper, non-compensable exercise of the police power into a Fifth Amendment taking, even when that property is subject to forfeiture. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680-85 (1974) (holding that there was no taking where a yacht that the owner had leased was forfeited due to the discovery of marijuana on board, despite the owner of the having "no knowledge that its property was being used in connection with or in violation of" the law). Plaintiffs have not been deprived of title to, use, or possession of their property or been subjected to restrictions on the use of their property. Although they must bear the cost of repair to their property after it was damaged in the police raid, the damage does not constitute an appropriation of the property for government or public use. The damage to the property was a consequence of the harmful use it was being put to by Mr. Castillo.

We do not find a principled reason to treat this realty case differently from the personalty cases. The only way to compensate plaintiffs pursuant to the Takings Clause would be to adopt their proposed analysis, creating a cause of action which is analogous to the *Penn Central* test. *See Penn Central Transp. Co. v. City of New York*, 438 U.S 104, 124 (1978). Such a cause of action would require a highly fact-intensive analysis, considering the lawfulness or reasonableness of the police action, the temporal nature of the action, whether personality or realty were involved, and the economic impact on the property. We decline to create such a test today without a

warrant from the Supreme Court and because it would place this court in the position of second-guessing the police conduct at issue.[4]

## CONCLUSION

We hold that plaintiffs have not suffered a taking of their property for public use without just compensation. We therefore grant defendant's motion to dismiss pursuant to RCFC 12(b)(6). The clerk is directed to dismiss the complaint and to enter judgment accordingly. No costs.

s/Eric G. Bruggink<br>
Eric G. Bruggink<br>
Senior Judge

---

[4] Plaintiffs apparently have been unsuccessful in their tort claim, although there may be other avenues of relief available in state court, or through a congressional reference. Pursuant to 28 U.S.C. §§ 1492, 2509 (2012), Congress has the option of referring this matter to the court for consideration of whether the interests of justice require that plaintiffs be compensated for the damage the USMS inflicted as a result of the raid and arrest. *See, e.g.*, *White Sands Racehorse of New Mexico*, 14 Cl. Ct. 559 (1988); *Shane v. United States*, 3 Cl. Ct. 294 (1983).